## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**CAPTAIN FLORA**                                                **CIVIL ACTION**
**ROGERS**


**VERSUS**                                                          **NO. 14-170-RLB**


**CITY OF BATON ROUGE,**
**THROUGH THE BATON ROUGE**
**POLICE DEPARTMENT**

---

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is a Motion for Summary Judgment (R. Doc. 29) filed by Defendant, the City of Baton Rouge, through the Baton Rouge Police Department (Defendant). Plaintiff, Captain Flora Rogers (Plaintiff), filed an Opposition (R. Doc. 33) in response to Defendant's Motion. For the reasons given below, Defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

## I.      BACKGROUND

In this action, Plaintiff claims that Defendant, her employer, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Age Discrimination in Employment Act, 29 U.S.C. § 623, by discriminating against her based on her race, age and participation in protected activity. Plaintiff began working for Defendant as a police officer in 1977. Plaintiff was eventually promoted from Officer to Sergeant and, in 2003, she was promoted to Lieutenant. (R. Doc. 29-3 at 1). According to Plaintiff, beginning in April of 2011, she was subjected to the

following conduct and adverse employment actions because of her age and race, or participation in protected activity.

First, Plaintiff was transferred on April 7, 2011 from East Baton Rouge Parish District Court Liaison to criminal records, and was allegedly replaced by "a third year and less experienced white vetran [sic], who was Plaintiff's subordinate." (R. Doc. 1 at 7).  "Upon being transferred," Plaintiff claims, she was "stripped down to doing civilian work below her level of experience and position." (R. Doc. 1 at 8).  Later in April, Plaintiff was informed by Captain Mary Walsh that she would be transferred to Operational Services to work as Captain Walsh's assistant. (R. Doc. 6 at 4) (R. Doc. 29-14 at 13) (transferred to Operational Services under Captain Walsh).  While working as Captain Walsh's assistant, Plaintiff claims that she was "only allowed to perform menial duties that were not congruent to her rank and position." (R. Doc. 1 at 8).

On June 2, 2011, Plaintiff was transferred out of her administrative position in Operational Services-Court Support Division to Uniform Patrol and assigned to District Two. (R. Doc. 1 at 3); (R. Doc. 29-3 at 1).  According to the record, this meant that Plaintiff would be back in the field for the first time in over 24 years. (R. Doc. 29-3 at 1); (R. Doc. 29-14 at 2, 5).  On September 20, 2011, Plaintiff was moved from District Two to District One within Uniform Patrol. (R. Doc. 1 at 4) (R. Doc. 29-3 at 2).

While at District Two (between June and September of 2011), Plaintiff was in the training phase of her transition to Uniform Patrol. (R. Doc. 1 at 3); (R. Doc. 29-10 at 2).  During that time, Plaintiff claims she was forced to train under the supervision of subordinates and was required to take classes with new recruits. (R. Doc. 1 at 3); (R. Doc. 29-4) (Plaintiff trained under Sergeant Michael Cantu, whom she outranked).  In particular, Plaintiff was required to take a law

class normally intended for new recruits. (R. Doc. 1 at 6); (R. Doc. 33-3 at 6-7); (R. Doc. 29-14 at 2).  According to Plaintiff, she was the only Lieutenant required to take the law class for new recruits.  (R. Doc. 33-4 at 2, 5) (Candice Graham had no memory of any other Lieutenant being required to take the law class with new recruits); (R. Doc. 33-6 at 2) (Daryl Rice testified that he did not know of any other Lieutenant required to attend the law class for new recruits and that current Lieutenants don't "necessarily have to go back and take the law class, they just do in-service").  Plaintiff alleges that the above transfers amounted to demotions and were taken because of her age and race.

As further proof that Defendant took these actions because of her age, Plaintiff claims that she was subjected to ageist comments from her co-workers and supervisors. (R. Doc. 1 at 7) ("On October 11, 2011 . . . Lieutenant Newman asked Plaintiff her age . . . . Upon her response, Lieutenant Newman stated . . . that "[a] 63 year old mou mou should be home playing with her grandchildren."); (R. Doc. 1 at 7) (other co-workers repeatedly asked Plaintiff about her retirement plans); (R. Doc. 29-14 at 2) (Plaintiff complained of being asked about her age and when she planned on retiring); (R. Doc. 29-14 at 5) (Captain Daryl Rice explained: "I did talk to her about my retirement plans and I told her that I know when it's time to leave and . . . you need to examine yourself and see if it is your time to leave."); (R. Doc. 29-14 at 4) (Captain Candace Graham reported that she told Plaintiff: "Well honey why don't you just retire.").

Plaintiff's training ended upon being moved to District One in September of 2011, at which time she began the evaluation phase of her transfer to Uniform Patrol.  At the end of November, Plaintiff was ordered to take the test associated with the law class she had completed about a month before.  Plaintiff, however, refused this order. (R. Doc. 29-6).

According to Plaintiff, she complained on December 16, 2011 that the above employment actions were being taken because of her race and age. (R. Doc. 1 at 8).  On that same day, Plaintiff was placed on administrative leave with pay until December 27, 2011, for refusing to take the test associated with the law class. (R. Doc. 29-3).  Beginning at that time, Plaintiff was also denied the ability to perform "extra duty" work, even "on her off and personal time" (R. Doc. 1 at 9), which would have allowed her to earn extra pay on top of her usual compensation. (R. Doc. 29-1 at 4); (R. Doc. 33-2); (R. Doc. 33-3 at 6).  Plaintiff also filed a formal complaint with human resources in January of 2012, complaining of age and race discrimination. (R. Doc. 29-14).

On February 8, 2012, Chief Dewayne White sent a letter notifying Plaintiff that he was "considering taking official disciplinary action" against her for refusing the order to take the law test.  According to Chief White's letter, a "pre-disciplinary hearing" would be held in his office on February 15, 2012.  In her February 14, 2012 response to Chief White's letter, Plaintiff gave the following explanation for her refusal to take the test associated with the law class.

First, Plaintiff explained that the test is ordinarily administered within a week from the end of the course, but in her case, she was not asked to take the test until "approximately an entire month later." (R. Doc. 29-6 at 2).  Plaintiff believed, based on talking with some of the trainers, that this was a "longer amount of time than [was] normal and/or suitable for taking this kind of test." (R. Doc. 29-6 at 2).  Plaintiff was concerned about "why this process was prolonged for this amount of time." (R. Doc. 29-6 at 2).  Moreover, Plaintiff informed Chief White that she was told by Captain Rice and Captain Roan that the "future of [her] job lied in the passing or failing of this test." (R. Doc. 29-6 at 2).  Given the pressure being placed on Plaintiff and the lapse in time between the test and her completion of the law class, Plaintiff "was under a

great deal of stress" and "made the decision not to take the test until [she] had some counseling to determine clarity, to address [her] concerns" and receive an "explanation as to why [she] was the only Lt. being ordered to take this test." (R. Doc. 29-6 at 2). Plaintiff also felt that being the only Lieutenant ordered to take the class with new recruits was "insulting and demeaning." (R. Doc. 29-6 at 3).

In March of 2012, following the hearing, Plaintiff was suspended, without pay, for refusing to take the test associated with the law class. (R. Doc. 29-3). This suspension was later reduced to a reprimand in July of 2012, without any explanation, and Plaintiff's back pay was restored. (R. Doc. 29-15). However, during her suspension, Plaintiff was still unable to perform "extra duty" work. (R. Doc. 1 at 9). Plaintiff claims that she was placed on administrative leave in December of 2011 and suspended in March of 2012, and precluded from earning extra pay during that period, as retaliation for complaining about age and race discrimination beginning in December of 2011. Plaintiff further claims that these actions were taken because of her age and race.

Finally, the record demonstrates that Plaintiff was promoted to Captain on June 11, 2012. (R. Doc. 29-7). However, nothing in the record indicates that Plaintiff took the test associated with the law class — either before or after her promotion to Captain.

## II.    LEGAL STANDARD

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing party may not rest on the mere allegations of their pleadings, but rather must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co.,*

*Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1).  The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in the non-movant's favor.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).  However, summary judgment must be entered against the plaintiff, if he or she fails to make an evidentiary showing sufficient to establish the existence of an element essential to his or her claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Without a showing sufficient to establish the existence of an element essential to the plaintiff's claim, there can be "no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race," among other things. 42 U.S.C. § 2000e-2(a)(1).  Likewise, the ADEA prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a).  Both statutes also make it unlawful for an employer to retaliate against an individual for opposing discrimination or otherwise participating in activity protected by either statute. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d).  While Title VII and the ADEA protect different traits, disparate treatment claims and retaliation claims under either Act typically utilize the *McDonnell Douglas* burden-shifting proof structure established by the Supreme Court. *See McDonnell Douglas, Corp. v. Green*, 411 U.S. 792, 802-03 (1973).[1]

---

[1] Despite bringing her claims under Title VII and the ADEA, the Court applies the burden-shifting framework established by the Supreme Court in *McDonnell Douglas, Corp. v. Green*, 411 U.S. 792, 802-03 (1973) — a disparate treatment claim brought under Title VII of the Civil Rights Act of 1964 (Tile VII), 42 U.S.C. § 2000e. Because the *McDonnell Douglas* framework is applicable to alleged violations of Title VII and the ADEA, among others, the Court

The *McDonnell Douglas* framework requires a plaintiff to first establish a prima facie case of discrimination.  As clarified by the Supreme Court, this initial burden "is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  Once established, the burden shifts to the defendant to "produce admissible evidence that [its] decisions were based on legitimate, nondiscriminatory reasons." *Turner v. Kansas City. S. Ry. Co.*, 675 F.3d 887, 900 (5th Cir. 2012); *see also McDonnell Douglas*, 411 U.S. at 802-803.  If the defendant carries its burden, the plaintiff must then prove by a "preponderance of the evidence that the legitimate reasons offered . . . were a pretext for discrimination." *Burdine*, 450 U.S. at 253.

Because the elements of Plaintiff's prima facie case for retaliation and disparate treatment (based on race or age) are somewhat different, the Court will analyze the two types of claims separately.  However, Defendant has offered the same legitimate nondiscriminatory reason for Plaintiff's alleged adverse employment actions to rebut both her disparate treatment claims and retaliation claims.  As such, Defendant's nondiscriminatory reason and Plaintiff's evidence of pretext will be considered without regard to the type of claim.

## III.   DISCUSSION

Plaintiff claims she was transferred and disciplined because of her age, race and protected activity in violation of Title VII and the ADEA.  In support of its Motion, Defendant raises several arguments.  Defendant's initial arguments concern Plaintiff's ability to make out a prima facie case of age discrimination using the proof structure established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973).  First, Defendant claims Plaintiff

---

relies on relevant cases decided under all applicable statutes. *See, e.g., Turner v. Kan. City S. Ry.*, 675 F.3d 887, 891-92 (5th Cir. 2012) (applying *McDonnell Douglas* to Title VII); *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000) (applying *McDonnell Douglas* to an ADA claim); *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) ("While the Supreme Court has not definitively resolved whether it is, we are bound by our circuit precedent applying *McDonnell Douglas* to age discrimination cases.") (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 n.2 (2009) ("[T]he Court has not definitively decided whether the evidentiary framework of *McDonnell Douglas* utilized in Title VII cases is appropriate in the ADEA context.") (internal citations omitted)).

cannot establish a prima facie case of discrimination because she did not suffer any adverse employment action.  Second, Defendant suggests that Plaintiff's ADEA claims must fail because she was not fired or replaced by someone outside of her protected class (R. Doc. 29-1 at 7) — an element Defendant believes is required to state a prima facie case of age discrimination using *McDonnell Douglas*, 411 U.S. at 801.

Next, Defendant argues that Plaintiff is unable to prove the causation element of her prima facie case of retaliation because any adverse employment action occurred prior to the filing of her internal complaint in January of 2012.  If Plaintiff is able to establish a prima facie case of discrimination and/or retaliation, however, Defendant alternatively suggests that any adverse employment actions were taken for legitimate nondiscriminatory reasons.  Finally, Defendant claims that Plaintiff cannot make out a claim for race discrimination as she has not presented any evidence of racial animus.

A.     **Prima Facie Case of Age Discrimination**

i.     **Elements of prima facie case**

Applying the burden-shifting proof structure established by the Supreme Court in *McDonnell Douglas, Corp. v. Green*, 411 U.S. 792, 801-02 (1973), Defendant first suggests that a prima facie case of age discrimination requires Plaintiff to "establish she was replaced by someone outside the protected class, someone younger, or was otherwise discharged because of her age." (R. Doc. 29-1 at 7).  Based on its interpretation of the law, Defendant argues that Plaintiff is unable to make out a prima facie case because she was "never dismissed or demoted and replaced by another person of any age . . . ." (R. Doc. 29-1 at 7).

Discharge (or demotion) and replacement by a younger worker, however, is not the only way to establish a prima facie case of age discrimination under the *McDonnell Douglas* proof

structure. If Defendant were correct, then only terminated or demoted employees would be protected by the ADEA. Rather, in ADEA cases, this Circuit has "clearly acknowledged that '*McDonnell Douglas* did not establish an immutable definition of a prima facie case'" and "that the *McDonnell Douglas* Court itself had recognized the factual variety of discrimination cases and the corresponding need for a flexible view of a prima facie discrimination case." *Williams v. G.M. Corp.*, 656 F.2d 120, 127-28 (5th Cir. 1981); *see also Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 812 (5th Cir. 1991) ("[T]he necessary elements of a prima facie employment discrimination case are not Platonic forms, pure and unchanging; rather, they vary depending on the facts of a particular case."); *Achor v. Riverside Golf Club*, 117 F.3d 339, 343 (7th Cir. 1997) ("The statute's question is not the age of the replacement (or whether there was one) but whether the plaintiff would have kept his job had he been younger.").

Indeed, the Fifth Circuit acknowledged in *Brown v. CSC Logic, Inc*., the case upon which Defendant principally relies, "the possibility that a plaintiff may not be able to show he or she was replaced by a younger employee. In such a case, the plaintiff may instead meet his burden by demonstrating that he was otherwise discharged because of his age." *Brown*, 82 F.3d 651, 655 (5th Cir. 1996).

And so, to establish a prima facie case of age discrimination using the *McDonnell Douglas* proof structure, an ADEA plaintiff must show that he or she was: (1) qualified for the position; (2) within the protected class; and (3) and suffered an adverse employment action "*because of his [or her] age*." *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 575 (5th Cir. 2003) (finding that the district court erred by "holding that Palasota was required to show that a younger employee was given preferential treatment" to make out a prima facie case of age discrimination); *see also Smith v. City of Jackson, Mississippi*, 351 F.3d 183, 196 (5th Cir. 2003)

(a prima facie case under the ADEA requires proof of "disparate treatment because of membership in the protected class."); *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1060 (5th Cir. 1998) ("he was otherwise [discriminated against] because of his age").

As such, the Court rejects Defendant's legal argument that Plaintiff is unable to establish a prima facie case absent a showing of discharge (or demotion) and replacement by a younger worker.

### ii.    Adverse employment action

Alternatively, Defendant argues that Plaintiff cannot make out a prima facie case of discrimination because she was not subject to any adverse employment action.

For purposes of intentional discrimination,[2] an adverse employment action (or "ultimate employment action") is generally one that "affect[s] job duties, compensation, or benefits." *Pegram v. Honeywell*, 361 F.3d 272, 282 (5th Cir. 2004).  Examples of adverse or ultimate employment actions include "hiring, granting leave, discharging, promoting, and compensating." *Honeywell*, 361 F.3d at 282. "Transfers . . . and suspensions can [also] be ultimate employment actions." *Moore v. True Temper Sports, Inc.*, 2011 WL 5507401, at *1 (N.D. Miss. Nov. 10, 2011).

According to the Complaint and Plaintiff's Opposition, she claims that she was subjected to the following adverse employment actions:

---

[2] Under the substantive provisions of Title VII and the ADEA, "only 'ultimate employment decision'" are recognized "as actionable adverse employment actions." *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007).  The "anti-retaliation provision[s], *unlike the substantive provision[s]*, [are] not limited to discriminatory actions that affect the terms and conditions of employment" — i.e., ultimate employment actions. *McCoy*, 492 F.3d at 559-60. Instead, for purposes of retaliation, an employment action is adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  Here, Plaintiff claims that she suffered adverse employment actions based on because of her age, race *and* protected activity.  The adverse employment actions alleged by Plaintiff meet the substantive provisions' more stringent standard for determining which employment actions are adverse.  Therefore, the Court does not repeat its analysis of Plaintiff's alleged adverse employment actions in its discussion of Plaintiff's retaliation claim.

(1)     On April 7, 2011 Plaintiff was transferred from her position as District Court Liaison to criminal records within the Department of Operational Services.  Plaintiff claims this transfer amounts to a demotion as the position required only "civilian work below her level of experience and position." (R. Doc. 33 at 6-7).

(2)     In April of 2011, Plaintiff was transferred within Operational Services to work as Captain Mary Walsh's assistant, which she claims was a demotion because she "was only allowed to perform menial duties that were not congruent to her rank and position." (R. Doc. 33 at 7).

(3)     On June 14, 2011, Plaintiff was transferred from the Operational Services Department to Uniform Patrol, requiring her to return to the field for the first time in over 24 years. Plaintiff was initially assigned to the night shift in District Two and was later moved to the First District on September 20, 2011. (R. Doc. 29-8); (R. Doc. 29-9). Plaintiff argues this transfer was a demotion as she was assigned to train with an officer below her rank, unable to earn extra duty pay during her training phase (R. Doc. 29-1 at 7), made to perform menial duties instead of her assigned duties, and required to attend rookie training courses, including a law class that she had already taken. (R. Doc. 33 at 4).

(4)     Between December 16, 2011 and December 27, 2011, Plaintiff was placed on administrative leave with pay after she did not take a test associated with the law class she was required to take after her transfer to Uniform Patrol. (R. Doc. 33 at 3).  While on administrative leave, Plaintiff was precluded from working "extra duties" to earn more money. (R. Doc. 33-2).  Because she was unable to earn extra money, Plaintiff argues that her placement on administrative leave constitutes an adverse employment action. (R. Doc. 33 at 3).

(5)     In March of 2012, Plaintiff was suspended without pay for 15 days and she was not allowed to earn extra pay, again, because she did not take the test associated with the law class. (R. Doc. 33 at 3).  Although the suspension was later rescinded and she was reimbursed for back pay, Plaintiff suggests this constitutes an adverse employment action because she lost the ability to earn extra pay. (R. Doc. 33 at 3).

Regarding Plaintiff's three transfers, Defendant first argues that because the transfers were based on operational needs and "none of the transfers were disciplinary," they do not rise to the level of adverse employment actions. (R. Doc. 29-1 at 6-6).  However, the reasons behind the transfers go to whether they were taken because of Plaintiff's age and are not relevant to whether transfers such as these constitute adverse employment actions.  Aside from this argument, Defendant has not put forth any evidence suggesting that summary judgment is appropriate as to Plaintiff's three transfer claims.

Plaintiff has put forth evidence sufficient to establish a genuine issue of material fact as to whether the transfers constitute adverse employment actions.  A transfer may be objectively characterized as a demotion and constitute an adverse employment action, regardless of any decrease in pay or rank, if "the new position proves objectively worse." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014).  For examples, transfers affecting a change in job duties, working hours, responsibilities, prestige, and opportunities for advancement or compensation, may constitute adverse employment actions. *See Thompson*, 764 F.3d at 503-04 ("a transfer . . . can be the equivalent of a demotion and thus constitute an adverse employment action," regardless of any "decrease in pay, title, or grade," where the new position is "less prestigious or less interesting or providing less room for advancement") (collecting cases); *Rizzo v. Children's World Learning Centers, Inc.*, 173 F.3d 254, 260 (5th Cir. 1999) (a reasonable jury could find that a transfer affecting the claimant's assigned duties and hours was an adverse employment action and amounted to a demotion); *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996) (finding the transfers of two police officers from the Intelligence Unit to the night patrol, without reductions in pay, were nonetheless adverse employment actions when, because of differences in prestige and working hours, the transfers could be objectively characterized as demotions).

According to Plaintiff, her transfers were associated with diminished responsibilities, job duties and compensation, as well as supervision by subordinates, additional training not usually required of lieutenants, and the performance of civilian work below her rank. (R. Doc. 1); (R. Doc. 33); (R. Doc. 29-14).  Upon being transferred to Uniform Patrol, which required Plaintiff to return to the field for the first time in over 24 years, Plaintiff was ordered to undergo additional supervised training and take courses, including a law course, usually required for new recruits.

(R. Doc. 29-4) (Plaintiff was trained by an acting lieutenant whom she outranked); (R. Doc. 29-10) (assignment to law class); (R. Doc. 29-6) (Plaintiff complains that no other lieutenants were required to take the law class for new recruits); (R. Doc. 33-4 at 2, 5) (Candice Graham testified that she could not remember another lieutenant being required to take the law class and pass the associated test prior to Plaintiff); (R. Doc. 33-6 at 2) (Daryl Rice testified that lieutenants do not "necessarily have to go back and take the law class" as Plaintiff was required to do. Instead, lieutenants do classes "in-service."); (R. Doc. 33-3 at 6) (Corporal Myron Daniels explained that Plaintiff was required to "sit in a training class with cadets" for discriminatory reasons.  He explained that initially "no reason was given as to why" the class was required, but that "[e]xcuses were later supplied.").  During her training, Plaintiff complained that she was precluded from performing the work of a lieutenant and was made to perform remedial tasks below her position. (R. Doc. 29-14).

During her training period, Plaintiff was likewise precluded from earning additional compensation through "Extra Duty." (R. Doc. 29-2 at 2-3).  Corporal Myron Daniels, Plaintiff's "representative through Magnolia State Peace Officers Association,"[3] provided in an EEO Internal Investigation interview that Plaintiff was taken "off of Extra Duty" and prevented from earning additional compensation during this time period because the Chief of Police wanted her to "concentrate on her training." (R. Doc. 33-3 at 4, 6); (R. Doc. 29-2 at 2-3). As such, Plaintiff has produced sufficient evidence to establish a genuine issue of material fact as to whether her transfers constituted adverse employment actions.

---

[3] According to Corporal Daniels, the Magnolia State Peace Officers Association is a "nonprofit community organization geared towards the betterment of law enforcement and the administration of justice throughout the State . . . ." (R. Doc. 33-3 at 4).

Next, Defendant suggests that because Plaintiff's administrative leave in 2011 was with pay and her March 2012 suspension was later rescinded with back pay reimbursed, neither constitute adverse employment actions. (R. Doc. 29-1 at 6-7).  However, the record indicates that Plaintiff was not allowed to earn extra pay during both her suspension and administrative leave. As such, Plaintiff has put forth sufficient evidence that both her administrative leave and suspension constitute adverse employment actions. *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001) (employment actions affecting compensations are ultimate employment decisions); *Bustillos v. Mississippi Valley State University*, 2013 WL 123730, at *3 (N.D. Miss. Jan. 9, 2013) (a five-day suspension affecting pay constitute an adverse employment action); *Haire v. Board of Supervisors of Louisiana State University*, 719 F.3d 356, 367 n.16 (5th Cir. 2013) (Because the decision to preclude plaintiff from performing overtime work "may have affected Haire's income, it arguably constitutes an adverse employment action"); *Johnson v. Manpower Professional Services, Inc.*, 442 F. App'x 977, 982 (5th Cir. 2011) ("Denial of overtime pay is an adverse employment action because it relates to Johnson's compensation.").

As such, considering the evidence of record, applicable law, and Defendant's arguments, the Court finds summary judgment inappropriate on the issue of whether Plaintiff was subject to adverse employment actions.

### iii.    Because of age

As the final element of her prima facie case, Plaintiff must establish that she suffered any adverse employment actions because of her age. *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 575 (5th Cir. 2003).  Defendant suggests that "Plaintiff has no proof whatsoever that any of the actions she complained of herein were because of her age or that there was age-related animus." (R. Doc. 29-1 at 7).  As support, Defendant first suggests that a "few [age-related] comments

made in the workplace" are insufficient to show animus. (R. Doc. 29-1 at 7). The Court notes

that Defendant does not expressly deny that any comments were ever made concerning

Plaintiff's age or retirement.  Second, Defendant argues that Plaintiff was not "replaced" by a

younger worker upon being transferred to Uniform Patrol. Rather, "her [former] duties were

handled by a junior officer." (R. Doc. 29-1 at 7).  Defendant does not, however, indicate the age

of the junior officer.

For the reasons given below, the Court finds Defendant has failed to establish the absence

of a genuine issue of material fact warranting summary judgment on the issue of whether

Plaintiff was subject to adverse employment actions because of her age.  Instead, Plaintiff has

produced or otherwise pointed to record evidence sufficient to overcome Defendant's Motion for

Summary Judgment. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)

("The burden of establishing a prima facie case of disparate treatment is not onerous.").

First, Plaintiff points to evidence that she was subjected to ageist comments and repeated

questioning regarding her plans to retire.  According to the Investigative Report,[4] prepared at the

---

[4] The Investigative Report was provided by Defendant as an exhibit to its Motion for Summary Judgment. (R. Doc. 29-14).  The Report was written by Micheline Millender, Defendant's employee, and details Defendant's Human Resources Department's investigation of Plaintiff's internal complaint. (R. Doc. 29-14 at 1).  The Investigative Report summarizes Ms. Millender's interviews of several employee-witnesses and directly quotes statements made by each employee during his or her interview. (R. Doc. 29-14 at 1) ("Please note that all words in quotes are the direct wording from the interviewed persons, no wording or grammar was altered by the investigator or reporter."). Both parties rely on the Investigative Report in connection with Defendant's Motion for Summary Judgment.  While neither party objects to its admissibility, the Court notes that the Investigative Report is competent evidence that may be considered at summary judgment. *See Crimm v. Missouri Pacific R. Co.*, 750 F.2d 703, 709 (8th Cir. 1984) (handwritten notes and internal investigative report prepared by human resources employee based on employee's investigation of plaintiff's internal complaint of sexual harassment, including interviews with plaintiff's coworkers, was admissible at summary judgment under the business records exception to the hearsay rule) (citing Fed. R. Civ. P. 801 (hearsay); Fed. R. Civ. P. 803(6) (business records exception)); *Wright-Simmons v. City of Oklahoma*, 155 F.3d 1264, 1268 (10th Cir. 1998) (district court erred in not considering investigative report and interview notes compiled by human resources in investigating plaintiff's complaint of racial harassment); *Coker v. Dallas County Jail*, 2009 WL 1953038, at *6 (N.D. Tex. Feb. 25, 2009) (investigative reports compiled by jail staff containing statements from inmates, jail officers, jail staff and plaintiff were admissible under business records exception to hearsay rule); *E.E.O.C. v. New Breed Logistics*, 2013 WL 10129301, at *1 (W.D. Tenn. April 26, 2013) (statements Employee A made to Employee B during Employee B's investigation of plaintiff's internal complaint of sexual harassment was admissible under Rule 801(d)(2)(D) as a statement offered against an opposing party that was made by the party's employee); *Bernhardt v. State of California Dep't of Corrections and Rehabilitation*, 2015 WL 2003096, at *1-2 (E.D. Cal. April 29, 2015)

conclusion of Defendant's investigation into Plaintiff's internal complaint of discrimination, in her internal complaint, Plaintiff alleged that "Lt. Newman said, 'You are a 63 [year] old maw-maw who should be home playing with the grandchildren.'" (R. Doc. 29-14 at 2).  During the internal investigation, Lt. Newman, who trained Plaintiff during her transition to Uniform Patrol, denied making this comment. (R. Doc. 29-14 at 7).  Plaintiff also told human resources that Lt. Newman stated: "I just can't understand why all of the ole timers are still in the department holding up space. They should just move on and give others opportunity." (R. Doc. 29-14 at 7). When questioned during the investigation, Lt. Newman did not expressly deny that the statement was made.  Instead, he responded, "It wasn't me that said that, there was a round table discussion among officers that were talking about retirement." (R. Doc. 29-14 at 7).

Plaintiff further alleged that Sergeant Michael Cantu wrongfully accused her of sleeping on the job and claimed that Plaintiff was unable to see while driving at night. (R. Doc. 29-14 at 8).  Sgt. Cantu, who also participated in Plaintiff's training, denied making the accusation and claimed that he was concerned for Plaintiff's safety. (R. Doc. 29-14 at 8). After Sgt. Cantu relayed this information to Captain Shaun Baxley, Cpt. Baxley allegedly "questioned [Plaintiff] about having trouble seeing at night while driving[,] [] inferring that she had Glaucoma and linking it to his fathers' [sic] [Glaucoma]." (R. Doc. 29-14 at 3).  When questioned during the internal investigation, Cpt. Baxley admitted making these statements, but said that he was mostly concerned about her safety and that his comments were based on information received from Sgt. Cantu. (R. Doc. 29-14).

(employer's internal investigative report, which contained interviews and statements of fellow employees, prepared at the conclusion of the employer's investigation of plaintiff's internal claims of sex discrimination, was admissible at summary judgment).

Moreover, Plaintiff claims that she was constantly questioned and "badgered" about retirement. (R. Doc. 29-14 at 2).  Plaintiff alleged that Captain Candace Graham suggested that she retire.  When asked by the internal investigator, Cpt. Graham stated: "She and I were talking and she said something about being frustrated[.] I assumed we were talking officer to officer and it was a brief conversation. I said, 'Well honey, why don't you just retire.'" (R. Doc. 29-14 at 4). While Cpt. Graham admitted making the statement, she denied any discriminatory motivation. Captain Daryl Rice was similarly asked about allegedly questioning Plaintiff about retirement. (R. Doc. 29-14 at 5).  According to the internal investigation, Cpt. Rice responded: "I did talk to her about my retirement date and I told her that I know when it's time to leave and that my date was approaching fast and you [(Plaintiff)] need to examine yourself and see if it is your time to leave." (R. Doc. 29-14 at 5).  Plaintiff further accused Lieutenant Todd Weishar of "badgering" her about retirement during meetings in front of Plaintiff's peers, which he denied. (R. Doc. 29-14 at 8).

One witness interviewed during the internal investigation, Lieutenant Carl Dunn, stated that, based on his observations, "Lt. Newman and Cpt. Roan [harassed Plaintiff because of her age] by telling her every day that she was going to lose her job and that she needed to retire." (R. Doc. 29-14 at 13).  Lt. Dunn also stated that Newman said that Plaintiff "needed to just go home." (R. Doc. 29-14 at 13).  Corporal Myron Daniels similarly stated that Plaintiff "explained to me that Officers were implying that she has been in the department for a long time and that it was time for her to retire. [Plaintiff] was offended by the remarks." (R. Doc. 33-3 at 5).  Based on his observations and attendance at several meetings between Plaintiff and her supervisors, Corporal Daniels explained: "I think all of the respondents played a part of discriminating based on Age in the aspect of retirement." (R. Doc. 29-14 at 13); (R. Doc. 33-3 at 6).

The evidence presented establishes a genuine issue of material as to whether she was treated adversely because of her age. *See Cox v. Dubuque Bank & Trust Co.*, 163 F.3d 492, 496 (8th Cir. 1998) (a reasonable jury could find the plaintiff was terminated because of her age based upon evidence that co-workers and supervisors "repeatedly asked Ms. Cox when she would retire and indicated they expected her to retire soon"); *Buckley v. Hospital Corporation of America, Inc.*, 758 F.2d 1525 (11th Cir. 1985) (several inquiries about retirement plans along with humiliating demotion, even with same pay and benefits, sufficient); *see also Laxton v. Gap, Inc.*, 33 F.3d 572, 583 n.4 (5th Cir. 2003) (In a case of circumstantial evidence, "An oral statement exhibiting discriminatory animus may be used to demonstrate pretext or, as is the case here, it may be used as additional evidence of discrimination.").  Which version of events is more credible is a question for the trier of fact — not this Court at the summary judgment stage. *Jones v. Robinson Property Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005) ("it is inappropriate to make credibility determinations or weigh the evidence on summary judgment").

**B.     Prima Facie Case of Retaliation**

Both Title VII and the Age Discrimination in Employment Act make it unlawful to retaliate against an employee "because the employee has opposed allegedly discriminatory practices by the employer or participated in a proceeding, charge or hearing where such practices are challenged. . . . These protected activities are described as 'opposition' or 'participation' activities." *De Ande v. St. Joseph Hospital*, 671 F.2d 850, 851 n.1 (5th Cir. 1982).  A plaintiff relying on circumstantial evidence establishes a prima facie case of retaliation by proving that: (1) he or she engaged in activity protected by Title VII or the ADEA; (2) a materially adverse action occurred; and (3) a causal connection exists between the protected activity and the adverse employment action. *LeMaire v. State of Louisiana*, 480 F.3d 383, 388 (5th Cir. 2007).

Here, Plaintiff alleges that she engaged in protected activity beginning in December of 2011. According to Plaintiff, "on or about December 16, 2011, Ms. Rogers submitted a letter to Captain Roan requesting a formal meeting with then Chief of Police Dwayne White to voice and address her concerns of harassment and discrimination." (R. Doc. 33 at 9). Plaintiff later filed a formal internal complaint with human resources in January of 2012. (R. Doc. 33 at 9); (R. Doc. 29-14).

To begin, there is only record evidence to support that Plaintiff first engaged in protected activity in January of 2012. (R. Doc. 29-14). Although Plaintiff claims to have written a letter complaining of discrimination "on or about December 16, 2011," she has not put forth any evidence of this complaint and instead relies on the bare assertions made in her Opposition to summary judgment. *Johnston v. City of Houston, Tx.*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("While the party opposing the motion [for summary judgment] may use proof filed by the movant to satisfy his burden, only evidence—not argument, not facts in the complaint—will satisfy the burden."); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994) ("conclusory allegations" and "unsubstantiated assertions" do not constitute evidence for purposes of defeating summary judgment); *Hockaday v. Tx. Dep't of Criminal Justice*, 914 F. Supp. 1439, 1446 (S.D. Tex. 1996) (It is "well established that arguments set forth in a brief in response to a motion for summary judgment, unsupported by . . . adequate summary judgment evidence, are insufficient to raise genuine issue of material fact to defeat a properly supported motion for summary judgment.").

Plaintiff's assertions, without any supporting evidence, are insufficient to either establish the fact that she first engaged in protected conduct on December 16, 2011 or raise a genuine issue as to this fact. As such, any alleged adverse employment actions occurring before January

of 2012 could not have been taken because of Plaintiff's participation in protected activity.  It is clear from the record that Plaintiff was last transferred in June of 2011, when she was placed in Uniform Patrol, and that she was last reassigned to District One (within Uniform Patrol) in September of 2011.  Plaintiff was placed on administrative leave from December 16, 2011 to December 27, 2011 and later suspended in March of 2012, and that during this time, Plaintiff was precluded from earning extra pay.  Only Plaintiff's March 2012 suspension (and associated inability to earn extra pay) occurred after her internal complaint in January of 2012.  Therefore,

**IT IS ORDERED** that Defendant's Motion for Summary Judgement is **GRANTED in part** to the extent Plaintiff claims that any of her transfers or her December 2011 administrative leave and associated denial of extra duty were retaliatory.  Plaintiff's retaliation claims based on her transfers and December 2011 administrative leave are therefore **DISMISSED with prejudice**.

Concerning its decision to suspend Plaintiff in March of 2012 and prevent her from earning extra pay, Defendant argues that the suspension was not retaliatory because the "grounds for discipline pre-dated the filing of the [January 2012] Complaint of discrimination." (R. Doc. 29-1 at 10).  However, Defendant does not cite to any legal authority, and the Court is unaware of any, supporting its proposition that the suspension, which occurred after Plaintiff allegedly complained of discrimination in January 2012, cannot be retaliatory because it was based on conduct occurring prior to Plaintiff's protected activity.  Other than this argument, Defendant does not point to any evidence or otherwise address any of Plaintiff's additional allegations regarding this retaliation claim.  As discussed below, Defendant's Motion is insufficient to warrant summary judgment on Plaintiff's remaining retaliation claim associated with her March 2012 suspension.  Plaintiff has put forth evidence demonstrating the existence of genuine issues

of material fact concerning the causal connection between her protected activity and the March 2012 suspension.

Defendant suspended Plaintiff in March of 2012 for not taking the exam associated with the law class — the same reason it placed her on administrative leave in December of 2011. (R. Doc. 29-3). Plaintiff was precluded from performing extra duty throughout the relevant period while she trained for her new position in Uniform Patrol and during her suspension. (R. Doc. 33-3 at 6); (R. Doc. 33-2).

Close timing between an employee's protected activity and an adverse action may provide the causal connection for a prima facie case of retaliation. *McCoy v. City of Shreveport*, 492 F.3d 551, 562 n.28 (5th Cir. 2007). Here, the close timing between Plaintiff's protected activity (January 2012), inability to work extra duty, and the suspension (March 2012) has been found sufficient to establish a prima facie case of retaliation. *See e.g., Shirley v. Chrysler First Inc.,* 970 F.2d 39, 43 (5th Cir. 1992) (two months was sufficient for plaintiff to establish temporal proximity); *Handzlik v.* U.S.*,* 93 Fed. Appx. 15, 19 (5th Cir. 2004) (same); *Weeks v. NationsBank, N.A.,* 2000 WL 341257, at *3 (N.D. Tex. 2000) (four months). As such, summary judgment is not appropriate.

**IT IS ORDERED** that Defendant's Motion is **DENIED** as to Plaintiff's retaliation claims associated with her March 2012 suspension.

### C.     Defendant's Legitimate Nondiscriminatory Reason

Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant to "rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. . . . To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence," the

reasons for the adverse employment action. *Tx. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248,

254-55 (1981).  A defendant's intermediate burden of establishing a legitimate

nondiscriminatory reason serves "to frame the ultimate factual issue of discrimination . . . with

sufficient clarity." *Burdine*, 450 U.S. at 255.  If the defendant carries its burden of production,

the plaintiff must then "have the opportunity to demonstrate that the proffered reason was not the

true reason for the employment decision." *Id.* at 256.  Offering proof that the defendant's

"explanation is unworthy of credence is simply one form of circumstantial evidence that is

probative of intentional discrimination, and it may be quite persuasive." *Reeves v. Sanderson*

*Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000); *see also Furnco Const. Corp. v. Waters*, 438

U.S. 567, 577 (1978) ("when all legitimate reasons for rejecting an applicant have been

eliminated as possible reasons for the employer's actions, it is more likely than not the employer

. . . based his decision on an impermissible consideration").

 Here, Defendant claims that its legitimate nondiscriminatory reason for placing Plaintiff

on administrative leave, and later suspension, was her "refusal" to take the test associated with

the law class she attended in September and October of 2011. (R. Doc. 29-1 at 11); (R. Doc. 29-

5) (pre-disciplinary letter sent prior to Plaintiff's suspension).  According to Defendant the order

requiring Plaintiff to take the test was "designed to make her more effective in her position." (R.

Doc. 29-1 at 11).  Defendant also points out that Plaintiff's March 2012 suspension was later

reduced to a reprimand. (R. Doc. 29-1 at 11); (R. Doc. 29-15) (July 31, 2012 Letter rescinding

Plaintiff's suspension and "substitute[ing] in its place a reprimand" without any explanation or

indication that Plaintiff later took the test).  Defendant further argues that its decision to preclude

Plaintiff from performing extra duty was done for the legitimate and nondiscriminatory reason of

affording Plaintiff "an opportunity to focus on reaching the training goals of her new post." (R. Doc. 29-1 at 11).

   While Defendant has stated legitimate nondiscriminatory reasons for the disciplinary actions mentioned above, Plaintiff has produced or pointed to sufficient evidence concerning the veracity of Defendant's legitimate nondiscriminatory reasons to establish a genuine issue of material fact as to pretext. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) ("If Nichols can raise a genuine issue of material fact as to whether he has established pretext, that will suffice to avoid summary judgment. No additional evidence of discrimination is needed to defeat the summary judgment motion."); *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir. 1994) (While plaintiff bears the ultimate burden at trial, "for summary judgment purposes, [as] the non-moving party," plaintiff "has a lesser burden. He must only produce evidence from which a rational factfinder could infer that the company lied about its proffered reasons for his dismissal.").

   Defendant claims that the test was necessary because it would make Plaintiff "more effective in her position." (R. Doc. 29-1 at 11).  However, the importance of the test is belied by the fact that Plaintiff was not ordered to take the test until after the completion of her training phase with Uniform Patrol and after she was already working in the field. (R. Doc. 29-10) (informing Plaintiff that her training phase was complete while instructing her to attend law classes); (R. Doc. 29-14 at 6) (Plaintiff was placed in the field at the end of training).  Moreover, Defendant's decision to rescind Plaintiff's suspension without reason and without Plaintiff taking the law test, further contradicts its importance to her ability to perform her duties. (R. Doc. 29-15).  Plaintiff was also promoted to Captain only months later, despite no evidence that she had taken the law test. (R. Doc. 29-7).

As such, the Court finds a genuine issue of material fact exists and summary judgment is inappropriate on the issues of pretext and Defendant's legitimate nondiscriminatory reasons.

**D.      Race Discrimination**

In addition to her claims of age discrimination and retaliation, Plaintiff claims that the adverse employment actions discussed above were likewise taken because of her race (African American).  Plaintiff, however, has failed to put forth any evidence of racial animus or otherwise show that Defendant took any adverse employment action because of Plaintiff's race.

As proof of racial animus, Plaintiff offers the conclusory statement in her Opposition that she was replaced by a white veteran upon being transferred to criminal records on April 7, 2011.  (R. Doc. 33 at 6).  Plaintiff does not provide the Court with or otherwise point to any competent summary judgment evidence in support of her claim for race discrimination. *See* Fed. R. Civ. P. 56(c) (competent summary judgment evidence includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials"); *see also Little*, 37 F.3d at 1075 ("We do not," on a motion for summary judgment, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.").

It is "well settled that arguments set forth in a brief in response to a motion for summary judgment, unsupported by affidavits, deposition testimony, or other adequate summary judgment evidence, are insufficient to raise genuine issues of material fact to defeat a properly supported motion for summary judgment." *Hockaday*, 914 F. Supp. at 1446.  Given the circumstances of this case and Plaintiff's allegations, this conclusory statement is insufficient to survive summary judgment.  As such, the Court finds that Defendant's Motion for Summary Judgment is

**GRANTED in part** to the extent Plaintiff claims any of the adverse employment actions discussed above were taken because of her race in violation of Title VII.

## IV.    CONCLUSION

For the reasons given above, Defendant's Motion for Summary Judgment is **GRANTED in part** as to Plaintiff's claims of race discrimination and to the extent Plaintiff's claims that Defendant transferred her and placed her on administrative leave in December 2011 in retaliation for participating in protected activity under either Title VII or the ADEA.  Otherwise, Defendant's Motion for Summary Judgment is **DENIED**.

Signed in Baton Rouge, Louisiana, on July 25, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**